**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 17 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.                                                      No. 04-8021

PETE MAGALLANEZ,

Defendant-Appellant.

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. NO. 02-CR-125)**

_____

Daniel G. Blythe, Cheyenne, Wyoming, for Defendant-Appellant.

Kelly H. Rankin, Assistant United States Attorney, (Matthew H. Mead, United
States Attorney, with her on the brief) Casper, Wyoming, for Plaintiff-Appellee.

_____

Before **LUCERO**, **MURPHY**, and **McCONNELL**, Circuit Judges.

_____

**McCONNELL**, Circuit Judge.

_____

This case presents yet another factual variation in the stream of *Booker*-

related cases coming to this Court on plain error review. The defendant, Pete

Magallanez, was convicted by a jury for conspiracy to possess with intent to

distribute, and to distribute, methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1).  On special interrogatory, the jury attributed 50–500 grams of methamphetamine to him.  At sentencing, however, the district court found 1200 grams of methamphetamine attributable to him and increased his sentence pursuant to the United States Sentencing Guidelines.  Unlike our recent en banc decision in *United States v. Gonzalez-Huerta*, ___ F.3d ___, 2005 WL 807008 (10th Cir. 2005), this case involves constitutional (Sixth Amendment) error, which lowers the hurdle for demonstrating plain error.  But unlike our recent panel decision in *United States v. Dazey*, ___ F.3d ___, 2005 WL 846227 (10th Cir. 2005), the district judge in this case expressed the view that the evidence in support of the sentencing enhancements was sufficiently powerful—he said it was proven "beyond any doubt"—that we conclude any remand for resentencing would be futile.

Before we reach the sentencing issues in this case, however, we must first address the defendant's challenges to his conviction, which are predicated on certain alleged evidentiary errors and the insufficiency of the evidence.

## I.

Law enforcement agents began investigating the "Moreno" drug ring in early 1999.  The investigation included more than 100 interviews and the collection of numerous documents.  These interviews and documents led the

2

agents to believe that Mr. Magallanez was involved in the conspiracy. Mr. Magallanez was charged with one count of conspiracy to possess with intent to distribute, and to distribute, methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1). He received a jury trial.

During trial, the government called Kurt Dobbs, the Director of the Wyoming Division of Criminal Investigations, to testify about the general nature and scope of the investigation and about the developments that led to the arrest of Mr. Magallanez. The government also called DEA Special Agent Steve Woodson, who testified about his involvement in the investigation. Agent Woodson also testified as an expert with specialized knowledge on drug quantities and their prices in Wyoming. Several participants in the drug ring testified on behalf of the government and offered evidence that incriminated Mr. Magallanez. These latter witnesses had agreed to testify as part of plea agreements. The jury convicted Mr. Magallanez.

## II.

Mr. Magallanez raises four issues on appeal of his conviction.

### A.

First, Mr. Magallanez challenges admission of certain testimony by Agents Dobbs and Woodson. Agent Dobbs testified that information obtained from members of the Moreno drug ring, corroborated by documentation such as phone

3

records and money transfers, led to the indictment of Mr. Magallanez. Agent Dobbs characterized the investigation as a typical conspiracy investigation. He explained that the investigation entailed obtaining evidence in "several different ways. One of the main ways is interviewing people . . . and try[ing] to corroborate what they say through . . . other people's . . . interviews [or] paper[s] . . . ." *Id.*

Agent Woodson testified as to the street prices of methamphetamine, and explained the meaning of slang phrases that are commonly used by participants in a drug ring, but might not be familiar to those not participating. Agent Woodson also explained the value of phone records, motel records, and wire transfers in corroborating information obtained from witnesses.

Mr. Magallanez argues that the testimony of Agents Dobbs and Woodson was irrelevant, violated the Confrontation Clause of the Sixth Amendment, and amounted to improper vouching for the credibility of the government's witnesses. He objects in particular to Agent Dobbs's testimony that "[t]he [evidence] that would relate to the defendant is the documentation that corroborates or adds to the credibility of some of the people that gave us information about the defendant and the defendant's involvement in the trafficking of methamphetamine." R. Vol. 4 at 567. Although Mr. Magallanez does not cite any single statement of Agent Woodson as especially egregious, he argues that Agent Woodson testified in

4

summary that the witnesses in this case were telling the truth.

Mr. Mallaganez did not challenge this testimony before the district court. We therefore review the admission of the evidence for plain error. *United States v. Walser*, 275 F.3d 981, 985 (10th Cir. 2001). To establish plain error, Mr. Magallanez must demonstrate that the district court (1) committed error, (2) that the error was plain, and (3) that the plain error affected his substantial rights. *United States v. Cotton*, 535 U.S. 625, 631 (2002). If all these conditions are met, a court reviewing the error may exercise discretion to correct it if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 631-32.

Mr. Magallanez contends that the drug agents' testimony regarding the historical background of the investigation that ultimately led to him was irrelevant to the charges against him. However, "a defendant cannot complain of error which he has invited upon himself." *United States v. Cutler*, 948 F.2d 691, 697 (10th Cir. 1991) (internal quotations omitted). During his opening statement, Mr. Magallanez's attorney asserted that nothing in the documents produced by the investigation would implicate his client. Referring to a large stack of discovery documents, he said, "None of that stuff is going to say that Pete Magallanez is involved in this drug conspiracy . . . ." R. Vol. 2 at 160 (trial transcript). Additionally, the defendant's attorney referred to the documents during his cross-

5

examination of one of the drug enforcement agents and said, "I didn't find anything that seems to relate to Pete." R. Vol. 3 at 554. These assertions invited the government to address the relevance of the discovery documents. "It is widely recognized that a party who raises a subject in an opening statement 'opens the door' to admission of evidence on that same subject by the opposing party." *United States v. Chavez*, 229 F.3d 946, 952 (10th Cir. 2000). Mr. Magallanez cannot seek to exclude as irrelevant the agents' testimony regarding the background of the investigation after opening the door for the government to explain why "that stuff" related to him.

Mr. Magallanez argues that, even if the evidence is relevant, it is unfairly prejudicial. Federal Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." "The trial court has broad discretion to determine whether prejudice inherent in otherwise relevant evidence outweighs its probative value." *United States v. Youts*, 229 F.3d 1312, 1319 (10th Cir. 2000). Mr. Magallanez offers little to show that he was unfairly prejudiced, let alone that such prejudice substantially outweighed the probative value of the evidence. The evidence was probative in several different ways: (1) it explained how the direct evidence was obtained, (2) it helped to corroborate the witnesses who testified regarding times and locations of events, and (3) it helped the jury understand

6

when the investigation began and how long it lasted. Exclusion of evidence under Rule 403 "is an extraordinary remedy and should be used sparingly." *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999). We cannot say that the district court made an "obvious" or "substantial" error in determining that the evidence regarding preparation and development of the drug investigation was relevant and not unfairly prejudicial.

Mr. Magallanez argues that the agents' reliance on documents and interviews which were not introduced at trial negated his ability to confront his accusers and thus violated the Confrontation Clause of the Sixth Amendment. Specifically, Mr. Magallanez alleges that Agent Woodson testified in summary that "many other witnesses that were not called had said that the defendant was guilty and they were believable and he as an expert believed [them]." Appellant's Br. at 17. Mr. Magallanez relies on *Crawford v. Washington*, 541 U.S. 36 (2004), to support his argument. In *Crawford*, the Supreme Court held that the Confrontation Clause bars the admission of out-of-court statements of a testimonial nature, except where the witness is unavailable and the defendant has had a prior opportunity to cross-examine. *Id*. at 59.

We cannot find, and Mr. Magallanez does not identify, any out-of-court statement that can be characterized as testimonial. Rather, both agents testified as to the general nature of the investigation without introducing statements from

drug ring participants. Mr. Magallanez therefore fails to establish any error on this point.

Mr. Magallanez also argues that the drug enforcement agents improperly vouched for the credibility of the witnesses. Specifically, he contends that the agents' testimony that the documents corroborated the statements made by the witnesses vouched for the credibility of those witnesses. This claim also fails. Again, Mr. Magallanez's attorney's assertions that the documents were not related to his client opened the door for the government to explain the purpose of the documents. *Chavez*, 229 F.3d at 952. Further, the testimony in question was presented to explain the mechanics of a drug investigation. The agents spoke generally, even hypothetically, about how Western Union wire records, phone records, and hotel records help investigators to determine contact and money transfers between various individuals. R. Vol. 4, at 586. General testimony of this sort does not run afoul of the rule against hearsay. *See*, *e.g.*, *United States v. Trujillo*, 136 F.3d 1388, 1396 (10th Cir. 1998). Neither does it constitute improper vouching. The testimony of the agents served legitimate purposes. For instance, it provided necessary background about the nature of the investigation, without which the jury would have been deprived of understanding how and why the drug enforcement agents proceeded as they did. Additionally, the testimony served to answer the questions left open by Mr. Magallanez's assertions that the

8

investigative documents were not related to him. The district court did not commit substantial or obvious error in allowing the evidence to be heard.

**B.**

Mr. Magallanez next alleges that the prosecutor improperly vouched for the credibility of the government's witnesses when he referred to their obligation to testify truthfully under their plea agreements. Mr. Magallanez concedes that there was no objection to the alleged prosecutorial misconduct. Appellant's Br. at 19. Generally, "[t]his court reviews de novo whether prosecutorial misconduct occurred, which is a mixed question of law and fact." *United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002). However, here our review is for plain error since no objection was lodged at trial on this point. *Walser*, 275 F.3d at 985.

"Argument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." *United States v. Bowie*, 892 F.2d 1494, 1498 (10th Cir. 1990). A prosecutor is permitted to present evidence of plea agreements, including truthfulness provisions, on direct examination. *United States v. Lord*, 907 F.2d 1028, 1031 (10th Cir. 1990). "Use of the 'truthfulness' portions of these [plea] agreements becomes impermissible vouching only when

9

the prosecutors explicitly or implicitly indicate that they can monitor and accurately verify the truthfulness of the witness' testimony." *Bowie*, 892 F.2d at 1498. Contrary to Mr. Magallanez's assertion that the trial was "saturated" with improper vouching, [appellant's brief at 19] the record shows that the prosecutor's references to credibility were limited to asking each witness if his or her plea agreement contained an obligation to testify truthfully. The prosecutor did no more than reveal the language of the plea agreements and the obligations within those agreements to testify truthfully. Such actions are not prosecutorial misconduct.

## C.

Mr. Magallanez next argues that the testimony of a government rebuttal witness was admitted in violation of Federal Rules of Evidence 404(b) and 608. During the government's case in chief, a government witness testified that Mr. Magallanez had a drug source who "was this . . . Mexican from Byron," Wyoming. R. Vol. 3 at 391. Mr. Magallanez testified on direct examination that he had no "friend or drug connection up in Byron." R. Vol. 5 at 667-68. To rebut Mr. Magallanez's testimony, the government called as a witness Carlos Ramirez-Monares, who is from Byron. Mr. Ramirez-Monares testified that he sold a pound of methamphetamine to Mr. Magallanez in 2000. Mr. Magallanez argues that this evidence should have been excluded pursuant to Federal Rule of Evidence

10

404(b), which precludes evidence of crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith. Mr. Magallanez also argues that Rule 608(b), a prohibition on extrinsic evidence offered for attacking or supporting a witness's character for truthfulness, does not allow this type of evidence.

A challenge to the admission of rebuttal testimony is reviewed for abuse of discretion. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1224 (10th Cir. 2000). However, since Mr. Magallanez did not object to the rebuttal testimony of Ramirez at trial, we review the testimony under a plain error standard. *United States v. Peister*, 631 F.2d 658, 663 (10th Cir. 1980).

We first analyze Mr. Magallanez's claim that the testimony violated Rule 608. Rule 608(b) provides, in part, that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence." Rule 608 does not apply because the evidence was introduced not to "attack" the witness's "character" but to prove that he had a drug source from Byron. Rule 608(b) does not apply "when extrinsic evidence is used to show that a statement made by a defendant on direct examination is false . . . . A defendant may not make false statements on direct examination and rely on the government's inability to challenge his credibility as to the truth of those statements." *United States v.*

11

*Fleming*, 19 F.3d 1325, 1331 (10th Cir. 1994); *see also United States v. Castillo*, 181 F.3d 1129, 1132-33 (9th Cir. 1999). Thus, Mr. Magallanez cannot use Rule 608 to prevent the government from calling a rebuttal witness to challenge the truth of his claim that he did not have a drug source in Byron.

Mr. Magallanez's Rule 404 argument founders on the same point: Mr. Ramirez-Monares's testimony was not "character evidence," but direct rebuttal to Mr. Magallanez's testimony that he did not have a friend or drug connection from Byron. Mr. Magallanez concedes, as he must, that Rule 404 allows for "character evidence" to be heard for various legitimate purposes, including proof of motive, opportunity, or intent. Rebuttal evidence serves a legitimate purpose consistent with the exceptions listed in Rule 404. It allows a party to "explain, repel, contradict or disprove an adversary's proof." *United States v. LiCausi*, 167 F.3d 36, 52 (1st Cir. 1999). The evidence in question was properly introduced as rebuttal evidence and does not violate either Rule 608 or Rule 404. The district court did not commit plain error in allowing this evidence to be heard.

### D.

Finally, Mr. Magallanez argues that there was insufficient evidence to support his conviction. We review the sufficiency of the evidence to support a jury's verdict de novo. *United States v. Colonna*, 360 F.3d 1169, 1178 (10th Cir. 2004). To evaluate the sufficiency of the evidence, we ask whether, "after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Mr. Magallanez contends that we must decide the sufficiency question on the basis of the evidence submitted at the close of the government's case in chief. To support this argument, he cites *United States v. Finn*, 375 F.3d 1033 (10th Cir. 2004). However, Mr. Magallanez' reliance on *Finn* is misplaced, and he misconstrues the district court's ruling on his motion for acquittal at the end of the government's evidence. *Finn* held that where a trial court *reserves* ruling on a motion for judgment of acquittal, the sufficiency of the evidence analysis is limited to the government's case in chief, not evidence presented by the defendant or rebuttal evidence presented by the government. *Finn*, 375 F.3d at 1037. Here the trial court did not reserve ruling but denied the motion. R. Vol. 4 at 603-04. Thus, *Finn* does not apply. "[W]hen a defendant testifies on his own behalf, the court may consider the entire record in ruling on a renewed motion for acquittal at the close of all the evidence." *United States v. Vallo*, 238 F.3d 1242, 1248 (10th Cir. 2001). We will thus consider all of the evidence submitted.

Mr. Magallanez's attack on the sufficiency of the evidence is based on the lack of physical evidence and the government's heavy reliance on the testimony of co-conspirators. Neither point is persuasive.

13

Mr. Magallanez is mistaken to believe that physical evidence is necessary to sustain a verdict. Lack of physical evidence does not render the evidence that is presented insufficient. *See United States v. Gonzales*, 110 F.3d 936, 941 (2d Cir. 1997). Here, there was ample direct and circumstantial evidence upon which the jury could rely to find the defendant guilty. No fewer than six co-conspirators with intimate knowledge of the drug ring testified against Mr. Magallanez. The testimony of each co-conspirator largely corroborated that of the others. A conviction may stand merely on the uncorroborated testimony of an accomplice. *See United States v. McGuire*, 27 F.3d 457, 462 (10th Cir. 1994).

Mr. Magallanez argues that the testimony of these witnesses was not credible. It is not the role of an appellate court to consider the credibility of the witnesses or weigh the conflicting evidence, as these matters are within the exclusive province of the jury. *See United States v. Sanders*, 240 F.3d 1279, 1281 (10th Cir. 2001); *United States v. Ramirez*, 348 F.3d 1175, 1182 (10th Cir. 2003) (an appellate court does not second-guess jury determinations of credibility when assessing the sufficiency of the evidence to support a conviction). Here, Mr. Magallanez had the opportunity to attack the credibility of the government's witnesses at trial, and did so. Additionally, both the prosecutor and the court instructed the jurors that it was their responsibility to determine credibility. R. Vol. 2 at 104; Vol. 5 at 826-27; Vol. 6 at 853-54. The jury apparently believed

14

the witnesses, and that is the end of the matter. Mr. Magallanez's conviction was based on sufficient evidence.

## III.

We turn now to Mr. Magallanez's argument that his sentence was improper under *United States v. Booker*, 125 S. Ct. 738 (2005). Under the United States Sentencing Guidelines, the sentence for possession of narcotics with intent to distribute is dependent, among other factors, on the quantity of drugs for which the defendant is held responsible. U.S.S.G. § 2D1.1. The jury was given a special interrogatory for purposes of determining the quantity of drugs attributable to Mr. Magallanez. There were three ranges available: 0-50 grams, 50-500 grams, and over 500 grams. The jury found 50-500 grams of methamphetamine attributable to Mr. Magallanez. At sentencing, however, the district court made a finding that 1.21 kilograms were attributable to Mr. Magallanez, and sentenced accordingly. R. Vol. 7 at 42. The court made this determination by adding together the various amounts that government witnesses testified they had sold to Mr. Magallanez. R. Vol. 7 at 39. The court stated, "[This] is the amount that the government has proven to the Court's satisfaction. Frankly, they proved it beyond any doubt in my mind but certainly 'by a preponderance of the evidence' standard." *Id*. at 42–43. When the judge stated his findings, Mr. Magallanez's attorney said, "We don't accept [those findings],"

but he did not point to any specific mistakes or inaccuracies. *Id*. at 43.

This quantity of methamphetamine gave Mr. Magallanez a base offense level of 32 under the Guidelines. The district court also found that Mr. Magallanez had a criminal history category of I. This was undisputed. Based on his criminal history and the amount of methamphetamine involved, the district court sentenced Mr. Magallanez to 121 months in prison, which was the low end of the applicable sentencing range of 121–151 months. Had the district court based the sentence on the quantity of drugs determined by the jury, Mr. Magallanez could have received a base offense level of 30 at most, and perhaps as low as 26. When we review a verdict where the jury did not find a *specific* amount of drugs attributable to the defendant, but a *range*, we only know that the jury found unanimously the amount at the bottom of the range. In this case, the bottom of the range was 50 grams, which would have led to a sentence between 63–78 months, instead of the 121 months at which he was sentenced.

In his brief filed July 21, 2004, Mr. Magallanez argued that the district court's additional findings with respect to the amount of drugs attributable to him violated *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and that *Blakely* applies to the federal Sentencing Guidelines. After the parties submitted briefs and oral arguments, the Supreme Court decided *United States v. Booker*, 125 S.Ct. 738 (2005). In *Booker*, the Supreme Court extended *Blakely* to the federal Sentencing

16

Guidelines, holding that it is unconstitutional for the judge to make factual findings that would increase the top of a mandatory guidelines range. *See id*. at 756. To remedy this constitutional defect in sentencing procedures, the Court struck down the portions of the Sentencing Reform Act that made application of the Guidelines mandatory. *Id*.

Because Mr. Magallanez did not raise his *Blakely/Booker* objection at trial or sentencing, we review for plain error. *United States v. Gonzalez-Huerta*, ___ F.3d ___, 2005 WL 807008 at *3 (10th Cir. 2005)(en banc)*; cf. Booker*, 125 U.S. at 769 ("[W]e expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test."). Plain error review applies even if the alleged error is of constitutional dimension. *See Johnson v. United States*, 520 U.S. 461, 466 (1997). However, the plain error test is applied less rigorously in the context of alleged constitutional error than in the context of non-constitutional error. *See United States v. Dazey*, ___ F.3d ___, 2005 WL 846227 at *19 (10th Cir. 2005); *United States v. Mendez-Lopez*, 338 F.3d 1153, 1156 (10th Cir. 2003).

**A.**

Mr. Magallanez's principal constitutional argument is that, under *Blakely* and *Booker*, the district court was required to accept the jury's special verdict of drug quantity for purposes of sentencing, rather than calculating that amount for

itself.  At first blush, there might seem to be force to this argument.  *See United States v. Pimental*, Crim. No. 99-10310-NG, slip op. at 5-6 (D. Mass. Apr. 15, 2005) (holding that a district court may not impose a sentencing enhancement based on conduct of which the jury acquitted the defendant). The constitutional violation identified in *Blakely* and *Booker*, after all, was the Sixth Amendment right to trial by jury.  *Blakely*, 124 S. Ct. at 2538-39; *Booker*, 125 S. Ct. at 746. As Justice Scalia wrote for the Court in *Blakely*, "the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power."  124 S. Ct. at 2540.  *See also id.* at 2542 (noting the unfairness when a convicted defendant "see[s] his maximum potential sentence balloon from as little as five years to as much as life imprisonment, based not on facts proved to his peers beyond a reasonable doubt, but on facts extracted after trial from a report compiled by a probation officer who the judge thinks more likely got it right than got it wrong.") (citation to Guidelines provision omitted); *id.* at 2543 ("Our Constitution and the common-law traditions it entrenches, however, do not admit the contention that facts are better discovered by judicial inquisition than by adversarial testing before a jury."). The defendant in this case might well be excused for thinking that there is something amiss, under this constitutional principle, with allowing the judge to determine facts on which to sentence him to an additional 43 months in prison in the face of a jury verdict finding facts under

18

which he could be required to serve no more than 78 months.

But Mr. Magallanez's argument is wrong. Even prior to the Sentencing Reform Act, the Supreme Court held that a sentencing court had broad discretion to consider information concerning the defendant's life and characteristics, including conduct on which he had not been convicted. *See Williams v. New York*, 337 U.S. 241, 247 (1949). After passage of the Sentencing Reform Act, sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict. In *United States v. Watts,* 519 U.S. 148 (1997), the Court reversed two decisions of the Ninth Circuit holding that "sentencing courts could not consider conduct of the defendants' underlying charges of which they had been acquitted." *Id.* at 149. Significantly, the Court held that the lower court decisions conflicted not only with the Sentencing Guidelines, but with "the clear implications of 18 U.S.C. § 3661." *Id.* 18 U.S.C. § 3661 provides:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

According to the Court, "[t]he Guidelines did not alter this aspect of the sentencing court's discretion," *Watts*, 519 U.S. at 152, and it follows that the Court's partial invalidation of the Guidelines in *Booker* could not have altered it, either.

19

The decision in *Watts* was predicated on the rationale that "different standards of proof . . . govern at trial and sentencing." 519 U.S. at 155. An acquittal by the jury proves only that the defendant was not guilty beyond a reasonable doubt. Both before and under the Guidelines, facts relevant to sentencing have generally been found by a preponderance of the evidence. *Id.* at 156. A jury verdict of acquittal on related conduct, therefore, "does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *Id.* at 157. *See, e.g., United States v. Coleman*, 947 F.2d 1424, 1428-29 (10th Cir. 1991) (affirming Guidelines enhancement for possession of a firearm where the jury had acquitted of firearms possession charge); *United States v. Eagan*, 965 F.2d 887, 892 (10th Cir. 1992) (affirming Guidelines enhancement for possessing a weapon during commission of the offense where the jury had acquitted of charge of "using and carrying" a weapon during the offense); *United States v. Garcia*, 987 F.2d 1459, 1460-61 (10th Cir. 1993) (affirming Guidelines enhancement for drug quantities on which jury had acquitted the defendant).

Nothing in *Booker* changes this analysis.[1] 18 U.S.C. § 3661, which

---

[1] In his opinion on the *Booker* merits, Justice Stevens discussed *Watts* and concluded: "None of our prior cases is inconsistent with today's decision." 125 S. Ct. at 754. In a footnote, he described *Watts* as "present[ing] a very narrow question regarding the interaction of the Guidelines with the Double Jeopardy

(continued...)

underlay the decision in *Watts*, remains in full force. *See Booker*, 125 S. Ct. at 764 (retaining all parts of the Sentencing Act other than §§ 3553(b)(1) and 3742(e)). To be sure, after *Booker*, sentencing courts are no longer bound by the Guidelines; the Guidelines have become "effectively advisory." *Booker*, 125 S. Ct. at 757. But in sentencing criminal defendants for federal crimes, district courts are still required to consider Guideline ranges, *id.*, which are determined through application of the preponderance standard, just as they were before. The only difference is that the court has latitude, subject to reasonableness review, to depart from the resulting Guideline ranges. *See United States v. Lawrence*, ___ ___ F.3d ___, 2005 WL 906582 at *12 (10th Cir. 2005) ("the Supreme Court's holding in *Booker* would not have prohibited the district court from making the same factual findings and applying the same enhancements and adjustments to [the defendant's] sentence as long as it did not apply the Guidelines in a mandatory fashion"). Applying the logic of *Watts* to the Guidelines system as modified by *Booker*, we conclude that when a district court makes a determination of sentencing facts by a preponderance test under the now-advisory Guidelines, it is not bound by jury determinations reached through application of the more

---

[1](...continued)
Clause" and as having not had "the benefit of full briefing or oral argument." *Id.* at 754 n.4. Nonetheless, the statement in the text demonstrates that *Watts* remains good law, and it is not the place of an inferior court to overrule it. *See Agostini v. Felton*, 521 U.S. 203, 237-38 (1997).

21

onerous reasonable doubt standard. In this respect, the prior Guidelines scheme is unchanged by the seeming revolution of *Booker*.

### B.

It was error, however, for the district court to increase Mr. Magallanez's sentence beyond the maximum authorized by the jury verdict through mandatory application of the Guidelines to judge-found facts. *See Booker*, 125 S. Ct. at 757; *Gonzalez-Huerta*, 2005 WL 807008 at *2. The district court found by a preponderance of the evidence additional amounts of methamphetamine attributable to the defendant that the jury did not find beyond a reasonable doubt, and sentenced Mr. Magallanez above the top of the range authorized by the jury verdict, pursuant to the then-mandatory Sentencing Guidelines. That is constitutional error under *Booker*. *See id.* at 764. What is more, the error (unbeknownst to the district judge at the time) was plain, as is now firmly established. *See Gonzalez-Huerta*, 2005 WL 807008 at *3.

To warrant reversal on plain error review, the constitutional error must have affected the "substantial rights" of the defendant. *United States v. Cotton*, 535 U.S. 625, 631 (2002); *Dazey*, 2005 WL 846227 at *19. Moreover, even if there has been plain error that affected the defendant's "substantial rights," a court reviewing the error may exercise discretion to let it stand unless "the error seriously affects the fairness, integrity, or public reputation of judicial

22

proceedings." *Cotton*, 535 U.S. at 631-32; *Dazey*, 2005 WL 846227 at *23.

We need not resolve whether Mr. Magallanez has met his burden of showing an effect on his substantial rights if he cannot also show that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Cotton*, 535 U.S. at 632-33; *see Gonzalez-Huerta*, 2005 WL 807008, at *6 ("We need not determine whether [the defendant] can satisfy this burden [of showing his substantial rights were affected] because even if he were to meet the third prong, he must also satisfy the fourth prong to obtain relief."); *Lawrence*, 2005 WL 906582 at *12 (same, in the context of constitutional *Booker* error). This Court has observed that "[w]hether the district court would simply reimpose the same sentence on remand, or whether instead the sentence 'would likely change to a significant degree if [the case] were returned to the district court for discretionary resentencing,' is one factor to consider in determining whether the defendant can satisfy the fourth plain-error prong." *Lawrence*, 2005 WL 906582 at *12 (quoting *Gonzalez-Huerta*, 2005 WL 807008, at *13 (Ebel, J., concurring)) (alteration appears in original).

Under the facts of this case, we cannot conclude that Mr. Magallanez establishes that this error seriously affects the fairness, integrity, or public reputation of judicial proceedings. His sentence is within the national norm and there is no record evidence to support a lower sentence. Moreover, the district

23

court did not merely find the sentencing-enhancement facts by a preponderance of the evidence. The court expressly noted that those facts were proved "beyond any doubt in my mind." That strongly suggests that even with greater latitude, post-*Booker*, to take the weight of the evidence in support of sentencing enhancements into account, the court would reach the same conclusion regarding drug quantity. The court based its assessment of drug quantity on the evidence at trial, totaling up all drug quantities specifically linked by witnesses to Mr. Magallanez. Neither at sentencing nor in this Court has Mr. Magallanez pointed to any error in the court's calculations.

Nor is there is any reason to think the non-constitutional aspect of the *Booker* error warrants correction on plain error review. The district court did not make any comment that could be construed as expressing dissatisfaction with Mr. Magallanez's sentence, nor were there any facts in the record to suggest a reasonable probability that the district court would have exercised its discretion to depart from the Guidelines. *Cf. United States v. Trujillo-Terrazas*, ___ F.3d ___, 2004 WL 880896 at *5 (10th Cir. 2005) (reversing on plain error review where the defendant "present[ed] a compelling case that objective consideration of the § 3553(a) factors warrant[ed] a departure, and perhaps a significant departure, from the sentence suggested by the Guidelines."). To be sure, the district court sentenced Mr. Magallanez at the bottom of the range, but there is nothing to

24

suggest that the court was inclined to go lower, even if it had realized it had discretion to do so. *See Gonzalez-Huerta*, 2005 WL 807008 at *6-9 (relying on fourth prong of plain error to decline to reverse sentence at the bottom of the range).

In light of the district court's high degree of confidence in its finding of drug quantity, the lack of any basis in the record to doubt the accuracy of the court's calculations, and the absence of any reason to think the Guidelines range produced an inappropriate sentence under the facts of this case, a remand would be an exercise in futility. We therefore conclude that Mr. Magallanez has not met his burden of showing that the fairness, integrity, or public reputation of the proceedings would be imperilled by the sentence.

Accordingly, we **AFFIRM** Mr. Magallanez's conviction and sentence.