**F I L E D**

**UNITED STATES COURT OF APPEALS**

**January 24, 2006**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOSE MEDRANO,

      Defendant-Appellant.

No. 05-2057
(D.C. No. CR-03-895-LH)
(New Mexico)

---

## ORDER AND JUDGMENT*

---

Before **SEYMOUR**, **HARTZ**, and **McCONNELL**, Circuit Judges.

---

Jose Medrano brings this appeal asserting he was sentenced in violation of

*United States v. Booker*, 125 S. Ct. 738 (2005). We review "the district court's

legal interpretation and application of the sentencing guidelines de novo . . . ."

---

*After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, or collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

*United States v. Henry*, 164 F.3d 1304, 1310 (10th Cir. 1999). Because the district court did not run afoul of *Booker* in sentencing Mr. Medrano, we affirm his sentence.

Mr. Medrano was indicted by a grand jury of a single count of distribution of five grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). In April 2004, he was found guilty by a jury. Soon thereafter, the Supreme Court issued its decision in *Blakely v. Washington*, 542 U.S. 296 (2004). Mr. Medrano objected to his pre-sentence report (PSR), claiming in part that under *Blakely* his offense level should be calculated solely by the amount of substance containing methamphetamine alleged in his indictment and found by the jury rather than the weight of the substance set forth in the PSR. He also objected to the PSR's recommendation for an offense level increase for obstruction of justice pursuant to U.S.S.G. § 3C1.1.

The district court postponed sentencing to await the Supreme Court's decision in *Booker*. At sentencing, Mr. Medrano's attorney reasserted his objections to the PSR, arguing that calculation of Mr. Medrano's offense level should be limited to the facts found by the jury rather than facts found by the judge by relying on the PSR. Mr. Medrano's attorney did not challenge the accuracy of the drug amounts listed in the PSR, however, and conceded that after *Booker* the sentencing guidelines are advisory.

After hearing arguments, the district court declined to increase Mr. Medrano's offense level for obstruction of justice. But the court determined that based on the amount of methamphetamine involved in the transaction as asserted in the PSR, Mr. Medrano's offense level should be 30. The court concluded that Mr. Medrano's total offense level, coupled with his criminal history category of I, subjected him to an advisory sentencing range of 97 to 121 months in prison. The court sentenced Mr. Medrano to 97 months.

On appeal, Mr. Medrano contends the district court violated *Booker* by calculating his offense level based on judge found facts rather than solely on facts found by the jury. This argument highlights Mr. Medrano's misunderstanding *Booker*, which held "that *mandatory* application of the Guidelines violates the Sixth Amendment when judge-found facts, other than those of prior convictions, are employed to enhance a sentence." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 (10th Cir. 2005) (*en banc*) (emphasis added). In order to save guideline sentencing from ultimate demise, the Court made the guidelines "effectively advisory." *Booker*, 125 S. Ct. at 756-57. Therefore, after *Booker*, a judge may sentence a defendant based on judge-found facts so long as the court does not apply the guidelines in a mandatory fashion. As we said in *United States v. Magallanez*, 408 F.3d 672, 685 (10th Cir. 2005):

> [D]istrict courts are still required to consider Guideline ranges,
> which are determined through application of the preponderance

standard, *just as they were before*.  The only difference is that the court has latitude, subject to reasonableness review, to depart from the resulting Guideline ranges. . . . [W]hen a district court makes a determination of sentencing facts by a preponderance test under the now-advisory Guidelines, it is not bound by jury determinations reached through application of the more onerous reasonable doubt standard.  In this respect, the prior Guidelines scheme is unchanged by the seeming revolution of *Booker.*

*Id.* at 685 (citations omitted) (emphasis added).  *See also Gonzalez-Huerta*, 403 F.3d at 731 ("[C]ourts are still required to consider the Guidelines in determining sentences, but they are not required to impose a sentence within the Guideline range.").

The district court did not depart from the procedure detailed in *Magallanez* when it sentenced Mr. Medrano.  It made findings to determine Mr. Medrano's offense level and criminal history category in order to reach the applicable advisory guidelines range.  Mr. Medrano's attorney expressly agreed to the court's calculations.  *See* Aplt. App., tab 5 at 42.  The court then sentenced Mr. Medrano to a reasonable sentence within that range.  This process was in full accord with *Booker* and *Magallanez*.

In the alternative, Mr. Medrano contends his sentence is nevertheless unlawful because the district court treated the guidelines as mandatory in setting his sentence.  He does not argue that his post-*Booker* sentence is unreasonable.  *See Booker*, 125 S. Ct. at 767 ("The courts of appeals review sentencing decisions for unreasonableness.").  Rather, he posits that the district court erred by

complying with the notes in the guidelines' Drug Quantity Table. Note B directs that "in the case of a mixture or substance containing . . . methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater." U.S.S.G. § 2D1.1 n.B. The actual weight of the methamphetamine in Mr. Medrano's case was 34.2 grams, while the weight of the entire mixture containing the methamphetamine was 389.3 grams. In accordance with Note B, the district court calculated Mr. Medrano's offense level based on the larger amount. Mr. Medrano argues that because the guidelines are now advisory, the district court was wrong to comply with the directions provided in Note B. In essence, he appears to contend that the district court was at liberty to disregard the offense level calculation methodology outlined in the guidelines and arrive at a lower offense level for Mr. Medrano by calculating his offense level based on the actual weight of the methamphetamine rather than the entire weight of the methamphetamine mixture.

Again, Mr. Medrano's argument exposes his misconception of post-*Booker* sentencing. While the ultimate guidelines imprisonment range is now advisory, *see Booker*, 125 S. Ct. at 756–57, the process of determining the correct guideline range is the same as it was before *Booker*. *Id.* at 767 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them

into account when sentencing."); *see also Magallanez*, 408 F.3d at 685 ("district courts are still required to consider Guideline ranges"); *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005) ("[The] duty to 'consider' the Guidelines will ordinarily require the sentencing judge to determine the applicable Guideline range even though the judge is not required to sentence within that range. The Guideline range should be determined in the same manner as before *Booker/Fanfan*."). The district court did not err in relying on Note B to the Drug Quantity Table to determine Mr. Medrano's guideline offense level. *See United States v. Brooks*, 161 F.3d 1240, 1248 (10th Cir. 1998) ("[N]otes or commentary to the sentencing guidelines are considered binding authority unless either violative of the Constitution or a federal statute, or clearly inconsistent with the guideline commentary [it] purports to explain.").

We **AFFIRM**.

SUBMITTED FOR THE COURT

Stephanie K. Seymour
Circuit Judge