**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

PATRICIA SOEHNGE,

    Defendant-Appellant.

No. 06-1212

(D. of Colo.)

(D.C. No. 04-CR-102-WYD)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Judge, **HARTZ**, and **TYMKOVICH**, Circuit Judges.[**]

---

Patricia Soehnge pleaded guilty to one count of wire fraud and aiding and abetting the fraud under 18 U.S.C. §§ 1342 and 1343. The district court found Soehnge accountable for almost $1 million in losses as a participant in a jointly conducted criminal scheme to defraud the U.S. Department of Housing and Urban Development (HUD). The court sentenced her to 18 months in prison and

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th Cir. R. 32.1 (eff. Jan. 1, 2007).

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

restitution of $41,734.41. She argues that she did not engage in a joint scheme and her prison term should reflect only the loss of $41,734.41 directly accountable to her. We disagree and AFFIRM the district court sentence.

## I. Background

On August 25, 2005, Patricia Soehnge pleaded guilty to one count of wire fraud as well as aiding and abetting such fraud. Soehnge worked as a real estate agent for William Mendez's real estate agency in Lakewood, Colorado. In her work, she helped a number of clients whom she knew to be illegal aliens in the preparation of fraudulent mortgage applications. All of the mortgages were insured by the Federal Housing Administration, a division of the U.S. Department of Housing and Urban Development. Soehnge was not alone in preparing fraudulent applications. All but one Mendez employee was aware of the fraudulent mortgage applications permeating the office.

Soehnge pleaded guilty to wire fraud involving a mortgage application that contained a false W-2 and false pay stubs. The application was prepared by Soehnge's co-defendant, Nicolas Lopez, but Soehnge transmitted the application from the mortgage's Colorado lender to a HUD computer. The mortgage eventually went into foreclosure. Soehnge directly caused HUD $41,734.41 in losses from fraudulent mortgages.

The Presentence Report determined that Soehnge's joint conduct, however, involved a loss of $997,540.23, which increased her base offense level by 14

levels. This loss amount included losses caused by Mendez and Soehnge's other co-defendants pursuant to § 1B1.3(a)(1)(B) of the Sentencing Guidelines. Soehnge objected at sentencing. She argued insufficient information existed in the indictment or the plea agreement to establish that her conduct should extend to the losses created by Mendez and the other co-defendants. She appeals only this issue.

## II. Did the District Court Commit Clear Error in Finding Soehnge Jointly Undertook Criminal Activity with Her Co-Defendants?

We review the district court's sentencing facts for clear error. *United States v. Martinez,* 418 F.3d 1130, 1133 (10th Cir. 2005). We will not disturb the district court findings unless they are without support in the record or, after a full review, we are left with the firm conviction that a mistake has been made. *United States v. Burridge*, 191 F.3d 1297, 1301 (10th Cir. 1999)

To determine the scope of fraud for sentencing Soehnge, the district court must determine:

> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), *all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity*.

USSG § 1B1.3(1) (2005) (emphasis supplied).

Specifically, we are reviewing whether support exists in the record for the district court's finding Soehnge jointly undertook criminal activity with her co-defendants for which she is responsible due to the reasonably foreseeable nature of her co-defendant's crimes. "In determining the scope of the criminal activity that the particular defendant agreed to jointly undertake [], the court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." USSG § 1B1.3(1), cmt. n.2.

Soehnge does not dispute the amount of losses caused by the entire Mendez operation, nor that the losses were reasonably foreseeable. She only challenges whether sufficient evidence existed for the district court to find, by a preponderance of the evidence, that she undertook the criminal activity jointly with her co-defendants. *See United States v. Magallanez*, 408 F.3d 672, 684–85 (10th Cir. 2005) (establishing preponderance of the evidence as standard of factual review for sentencing decision). She cites to this court's decision in *United States v. Dazey*, 403 F.3d 1147, 1176 (10th Cir. 2005), establishing that "a defendant's accountability only extends to the criminal activity that he agreed to undertake." She believes no evidence presented sufficiently demonstrates that she agreed to the criminal activity undertaken by her co-defendants. But as we noted above, such agreement may be "fairly inferred from the conduct of the defendant and others." USSG § 1B1.3(1), cmt. n.2.

The sentencing court found the situation here analogous to the example of joint criminal conduct provided at USSG § 1B1.3(1) comment note 2(c)(8) where four drug importers mutually assist one another in their efforts to individually import marihuana.  Like these importers, the court felt Soehnge mutually assisted and was assisted by her co-defendants through the Mendez operation's joint advertising, office space, arrangements made with loan companies, information shared at meetings, and use of standardized forms for committing fraud.[1]  While the defendant disputes many of these findings in her reply brief, neither she nor the record provides sufficient contradictions for us to find the district court clearly erred in making the sentencing findings that it did.

### III.  Conclusion

For the foregoing reasons, we conclude the district court did not clearly err in finding Soehnge was part of a jointly conducted criminal activity that involved all of her co-defendants.  We AFFIRM the district court sentence.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

---

[1] The district court relied in large part on testimony at sentencing from a special agent in the Internal Revenue Service's criminal division.  It was within its bounds to take evidence not included in the plea agreement or the indictment to determine relevant conduct for sentencing.  As we noted in *Magallanez*, 408 F.3d at 684, "18 U.S.C. § 3661 provides: No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."