FILED
United States Court of Appeals
Tenth Circuit

April 7, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENT CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

PHILLIP LAMONT JONES,

Defendant - Appellant.

No. 07-7051

(E.D. Oklahoma)

(D.C. No. 6:06-CR-00070-RAW-1)

## ORDER AND JUDGMENT[*]

Before **MURPHY**, **ANDERSON**, and **GORSUCH**, Circuit Judges.

## I. INTRODUCTION

This is a direct appeal following the guilty plea and sentencing of Phillip Lamont Jones. On November 16, 2006, Jones was indicted on five criminal charges. He pleaded guilty to one of the charges in the indictment, Possession of Ecstasy with the Intent to Distribute. After hearing testimony that Jones was part of an ongoing drug manufacturing and distribution scheme, the district court attributed to Jones additional drugs beyond those found on his person at the time

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

of arrest. Jones challenges his sentence on several grounds. First, he argues the Due Process Clause mandated that the district court apply a higher evidentiary standard than preponderance of the evidence because the additional drugs significantly increased his sentence range under the advisory Sentencing Guidelines. Second, he argues the district court misinterpreted the Guidelines and improperly attributed to him drugs not relevant to the offense for which he was convicted. Third, he argues the district court lacked sufficient evidence to support attribution of all the additional drugs. This court rejects each of Jones's arguments and hereby **AFFIRMS** his sentence.

## II. BACKGROUND

On September 14, 2006, an anonymous caller directed police in Muskogee, Oklahoma, to the residence of Jones's sister. The caller said Jones was in possession of powder cocaine and was going to convert the cocaine into crack. Officers set up surveillance of the residence. They saw a man later identified as Jones leave the house and put a plastic bag in a garbage receptacle at the curb outside the residence. The officers subsequently retrieved the plastic bag from the garbage, opened it, and found inside plastic baggies that later tested positive for cocaine residue.

After Jones placed the plastic bag in the garbage, he and three other individuals got into a car and departed from the residence. The surveilling officers followed the vehicle and observed a moving violation and an expired tag,

so they had a marked police unit stop the car. The occupants were asked to exit the car so the police could conduct a dog-sniff of the vehicle. One occupant, Grover Evans, began to run from the police. As he ran he threw some crack to the ground. When he was apprehended more crack was found in his pocket. Evans later told authorities Jones was the leader of a local gang and a source of supply for crack, PCP, ecstasy, and methamphetamine. He also told authorities Jones cooked powder cocaine into crack. Evans said the drugs he threw on the ground had been placed in his lap by Jones when the police initiated the traffic stop. After the traffic stop, the officers obtained a search warrant and searched the house of Jones's sister. They found powder cocaine as well as paraphernalia for cooking crack.

On October 10, 2006, the police received information concerning possible drug activity and executed a search warrant on another residence. Three men fled the residence, and in their paths police found plastic baggies with cocaine and marijuana. Inside the house, officers arrested Jones, who had forty-one individually wrapped ecstasy pills, 2.6 grams of powder cocaine, and $140 in cash on his person. Officers also found crack and paraphernalia for cooking crack inside the residence.

Jones was charged with five counts, including two counts of Aiding and Abetting the Manufacture of Crack Cocaine, Possession of Ecstasy with the Intent to Distribute, Possession of a Firearm in Furtherance of a Drug Trafficking

Crime, and Possession of Cocaine. Jones pleaded guilty to Possession of Ecstasy with the Intent to Distribute. When he entered his plea, Jones admitted to the district court he intended to distribute some of the ecstasy pills to others.

Prior to sentencing a Presentence Report ("PSR") was prepared. In calculating Jones's Guidelines sentence range, the probation officer calculated the base offense level by attributing to Jones all of the illicit drugs found on the other individuals and in the residences during both incidents. Along with other relevant characteristics not challenged on appeal, this gave Jones a total offense level of 32. His criminal history category was III. This gave him a Guidelines sentence range of 151-188 months' imprisonment. Jones objected to the attribution of the additional drugs beyond the ecstasy in his pocket and argued sentencing facts needed to be proved by a clear and convincing standard. At sentencing, the district court rejected Jones's objections and found by a preponderance of the evidence that Jones "was in the business of dealing in illicit substances." The court continued: "Based on his involvement in the distribution of illegal drugs, including cocaine base . . . it is reasonable to believe that Mr. Jones was not only aware of the drugs recovered during the [September 14 and October 10 incidents], he was also involved in handling [] these drugs as well." The court attributed to Jones the same quantity of drugs suggested in the PSR. The court then imposed a within-Guidelines sentence of 180 months' imprisonment. If the district court had attributed to Jones only those drugs found on his person, his Guidelines range

-4-

would have been 21-27 months.  If the evidence from the September incident had been excluded, the Guidelines range would have been 78-97 months.

## III.  DISCUSSION

*A.  Standard of Proof for Sentencing Enhancements*

The district court applied a preponderance of the evidence standard when considering the additional facts offered to support the attribution of all the drugs to Jones.  In doing so, Jones argues it unconstitutionally increased his sentence.  He claims due process prevents a district court from finding additional facts at sentencing that increase a defendant's sentence so much that the additional facts are the "tail which wags the dog" of the underlying offense.  *McMillan v. Pennsylvania*, 477 U.S. 77, 88 (1977).  While acknowledging not every sentencing increase based upon judicially found facts is a due process violation, Jones argues the increase in his Guidelines range is so substantial that it implicates due process concerns.  At oral argument, counsel for Jones also argued the substantial increase in a sentence based upon judicially found facts implicates the Sixth Amendment right to a trial by jury.

Jones's arguments under both the Due Process Clause and the Sixth Amendment are foreclosed by binding precedent.  In *United States v. Washington*, 11 F.3d 1510, 1515-16 (10th Cir. 1993), this court considered a due process challenge to a drug trafficking sentence.  The district court increased the defendant's base offense level by eight levels after finding, by a preponderance of

the evidence, the defendant trafficked a greater quantity of drugs than the quantity for which he was convicted. *Id.* This resulted in the Guidelines sentence range increasing from approximately twenty years to consecutive forty-year terms. *Id.* at 1516. This court upheld the district court's use of a preponderance standard, stating: "the Due Process Clause does not require sentencing facts in the ordinary case to be proved by more than a preponderance standard. . . . At least as concerns making guideline calculations the issue of a higher than a preponderance standard is foreclosed in this circuit." *Id.*

Jones argues *Washington* is no longer controlling because it came before the line of Supreme Court and Tenth Circuit opinions beginning with *United States v. Booker*, 543 U.S. 220 (2005). In particular, Jones notes this court considers sentences within the Guidelines range to be presumptively reasonable. *United States v. Ivory*, 532 F.3d 1095, 1107 (10th Cir. 2008). Because sentences within the Guidelines range are presumed reasonable on appeal, Jones argues there is a greater need for scrutiny into how Guidelines sentences are calculated, and in particular a higher standard of proof should be required to prove relevant conduct.

Jones's argument that the *Booker* line of cases rendered *Washington* obsolete is based on the premise that *Booker* made it more difficult for district courts to depart or vary from the Guidelines. This is plainly not the import of *Booker*. *Booker* itself enabled district courts to vary from mandatory Guidelines

sentences by rendering the Guidelines advisory. 543 U.S. at 259-61. While a within-Guidelines sentence is presumed reasonable at the *appellate* level, a *district court* may not presume the Guidelines range is reasonable, but must instead "make an individualized assessment based on the facts presented." *Gall v. United States*, 128 S.Ct. 586, 596-97 (2007). *Booker* and its progeny have not made it more difficult for defendants to avoid within-Guidelines sentences; they have made it easier to do so. Therefore, there is no occasion for this court to revisit its holding in *Washington*, and that case forecloses Jones's due process argument.

At oral argument counsel for Jones also suggested the Sixth Amendment right to a trial by jury requires a higher evidentiary standard for judicially found facts at sentencing. That argument is squarely foreclosed by this court's post-*Booker* precedent, which holds the Sixth Amendment does not require a heightened evidentiary standard when the district court finds facts to calculate an advisory Guidelines range. *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1131 (10th Cir. 2006); *United States v. Magallanez*, 408 F.3d 672, 685 (10th Cir. 2005).

B. *Sentence Calculation Based Upon Relevant Conduct*

Jones argues the drugs discovered on September 14 should not be attributed to him because, under U.S.S.G. § 1B1.3(a)(1), the relevant conduct must have occurred "during the commission of the offense of conviction, in preparation for

that offense, or in the course of attempting to avoid detection or responsibility for that offense." Because the acts performed nearly a month earlier were not committed during the commission of the act of conviction, in preparation for that offense, or in the course of attempting to avoid detection for that offense, he argues those drugs were improperly attributed to him.

When hearing a challenge to a district court's sentencing calculation, this court reviews the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Mozee*, 405 F.3d 1082, 1088 (10th Cir. 2005). This court views "the evidence and inferences therefrom in the light most favorable to the district court's determination." *Id.*

Even assuming Jones is correct that none of the September 14 conduct is attributable under § 1B1.3(a)(1), that was not the applicable Guidelines provision used to calculate his sentence. Section 1B1.3(a)(2) governs the calculation of relevant conduct for "offenses of a character for which § 3D1.2(d) would require grouping of multiple counts." This is the applicable provision for drug offenses based primarily on quantity. *See* § 1B1.3 cmt. n.2(c)(6), (8); § 3D1.2 cmt. n.6. The PSR cited specifically to § 1B1.3(a)(2). Section 1B1.3(a)(2) defines as relevant conduct "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." Therefore, the district court was required only to find the acts of September 14 were part of the

same course of conduct or common scheme or plan as the act for which Jones was convicted.

Based upon Jones's own admission that he intended to distribute the ecstasy, the evidence that Jones supplied the Muskogee area with multiple kinds of drugs, Jones's presence during both incidents, and the drug manufacturing paraphernalia discovered at both houses, the district court had sufficient evidence to find by a preponderance of the evidence that: (1) Jones was engaged in an ongoing scheme to manufacture and distribute narcotics, and (2) Jones's possession of ecstasy was part of the ongoing drug distribution scheme. Evans was caught in possession of cocaine on September 14 after he ran from a car in which he was riding with Jones. The district court credited Evans's statement that Jones gave him the crack discovered that day. Consequently, the district court had sufficient evidence to find Jones, Evans, and others were engaged in an ongoing scheme to manufacture and distribute drugs, and the drugs and drug paraphernalia found on September 14 and October 10 were part of the ongoing scheme. Therefore, the district court did not err when it attributed to Jones all of the drugs discovered during both incidents.

## IV. CONCLUSION

The district court correctly applied a preponderance of the evidence standard when it made additional findings of fact regarding relevant conduct. It

also correctly applied the Sentencing Guidelines and its findings were supported by sufficient evidence.  Therefore, Jones's sentence is **AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge