**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

STEVEN JAMES WAITE, also known
as Steve Roberts,

      Defendant - Appellant.

No. 03-8100

(D. Wyoming)

(D.C. No. 01-CR-099-03-D)

## ORDER AND JUDGMENT[*]

Before **HARTZ**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

Defendant Steven James Waite pleaded guilty to two counts of distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). He appeals his sentence, relying primarily on *United States v. Booker*, 125 S. Ct. 738 (2005), because the sentence was imposed under guidelines considered mandatory at the time and the sentence exceeded what could have been imposed on the basis of the facts he admitted. We affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Mr. Waite was originally charged with two others in an indictment alleging an extensive conspiracy to distribute methamphetamine. Mr. Waite's trial was severed from the others. The remaining indicted conspirators, Jason Thomas Encinias and Xavier Arriola-Perez, were tried and convicted of conspiracy to possess with intent to distribute methamphetamine as well as possession with intent to distribute methamphetamine. *United States v. Encinias*, 2005 WL 408059 (10th Cir. 2005); *United States v. Arriola-Perez*, 2005 WL 1463502 (10th Cir. 2005). Mr. Waite then pleaded guilty to two counts in a second superseding indictment.

Mr. Waite did not stipulate to any quantity of drugs, and the government stated that no more than "5 kilograms of methamphetamine should be attributed to [Mr. Waite's] distribution for sentencing purposes." Plea Agreement, R. Vol. I Doc. 373 at 2. Nevertheless, the presentence report (PSR), citing the investigation of Drug Enforcement Administration Agent Steve Woodson, concluded that at least 9.072 kilograms (20 pounds) of methamphetamine were attributable to Mr. Waite and recommended a base-offense level of 36, leading to a total offense level of 33 after a three-level deduction for acceptance of responsibility. Agent Woodson apparently based the 9.072 figure largely on Joseph Dax's testimony at the trial of Encinias and Arriola-Perez. In his objections to the PSR, Mr. Waite disputed his association with Dax and asserted

that he had consistently denied the truth of Dax's testimony. He also filed a motion to exclude the use of Dax's testimony at the sentencing hearing.

At the sentencing hearings held in November 2003 the court took issue with the government's stipulation of drug quantity, noting that "the information before the Court as part of the plea agreement demonstrates pretty clearly that over 9 kilograms of methamphetamine were involved in this conspiracy." R. Vol. II at 5. The court stated:

> the fact the government may have stipulated as to relevant conduct does not in any way prohibit this Court from exercising its responsibility in determining what the relevant conduct is. . . . *In the world of this conspiracy, 9 kilos can be proven frankly beyond a shadow of a doubt.* So why are we talking about less than five?"

R. Vol. II at 6 (emphasis added). It called Agent Woodson, who testified that 9.072 kilograms (20 pounds) could be reasonably assigned to Mr. Waite and Dax.

Mr. Waite objected to Agent Woodson's testimony, arguing that it was uncorroborated. The court disagreed and adopted the PSR's recommended total-offense level and criminal-history category. Finding that 9.072 kilograms were attributable to Mr. Waite, the court stated:

> The testimony of [Agent Woodson] in this proceeding corroborates *what I already knew from the record in the previous trial.* Mr. Dax and Mr. Waite were jointly fronted methamphetamine by Arriola-Perez. The evidence is uncontroverted on that point. *Twenty pounds of methamphetamine, as both parties know, is probably a grotesquely understated amount,* but it's the only legitimate amount that I can attach any significance to for purposes of this sentencing.

R. Vol. III at 14 (emphasis added).  It sentenced Defendant to 168 months, the bottom of the applicable guidelines range.

Mr. Waite's opening brief argued that (1) the district court clearly erred in its drug-quantity calculation because it based the calculation on the uncorroborated testimony of a co-conspirator, and (2) his Sixth Amendment confrontation right was violated because he was unable to cross-examine Dax. After the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004), he filed a supplemental brief in which he argued that "following *Blakely*, it is unconstitutional for the Court to apply the federal guidelines enhancements in the sentence of [Defendant], which is to say, an increase in the drug quantity beyond what was admitted to." Aplt. Supp. Br. at 10.  Mr. Waite asserted that he admitted to only 3.5 grams in his guilty plea and his sentence was thus limited to that amount.  *Blakely* has, of course, been superseded by *United States v. Booker*, 125 S. Ct. 738 (2005), in federal Sentencing Guidelines cases.  We ordered supplemental briefing from both parties to address *Booker*.

## I.  *Booker* Issue

Because Mr. Waite raised the *Booker* issue for the first time on appeal, we review for plain error.  *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005).  "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or

-4-

public reputation of judicial proceedings." *Id.* If all four requirements are met, the reviewing court may exercise its discretion to correct the error. *Id.* at 736. "We conduct this analysis less rigidly when reviewing a potential constitutional error." *United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir. 2005) (internal quotation marks omitted).

The district court committed constitutional error that was plain because the sentence imposed was greater than could have been imposed under the guidelines based on the facts admitted by Mr. Waite. *See Gonzalez-Huerta*, 403 F.3d at 731-32 (distinguishing between constitutional and non-constitutional *Booker* error). Using the 3.5 grams figure admitted by Mr. Waite, the base offense level is 14. *See* USSG § 2D1.1(13). The sentencing range at that level and his criminal-history category of III would have been 21 to 27 months. *See* USSG §5A. The district court's finding that at least 9.072 kilograms was attributable to Mr. Waite led to a sentence of 168 months. The error is also plain. *See Johnson v. United States*, 520 U.S. 461, 468 (1997) ("[W]here the law at the time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that an error be 'plain' at the time of appellate consideration.").

It is unnecessary, however, to determine whether the error satisfies the third prong (whether it affected substantial rights) because we hold that it did not satisfy the fourth—whether it seriously affected the fairness, integrity, or public

reputation of judicial proceedings. *Gonzalez-Huerta*, 403 F.3d at 736. Relevant fourth-prong considerations include (1) whether the defendant challenged the facts underlying the judicial finding that increased his sentence, *United States v. Hauk*, __ F.3d __, __, 2005 WL 1499676 *14 (10th Cir. 2005); (2) the difference between the sentence based on judge-found facts and one based on facts admitted or found by a jury, *id.*; (3) the strength or weakness of the evidence supporting the sentence imposed, *United States v. Lauder*, __ F.3d __, __, 2005 WL 1349974 *13 (10th Cir. 2005); (4) whether "objective consideration" of the sentencing factors in 18 U.S.C. § 3553(a) suggests that a departure from the Guidelines is appropriate, *id.*; and (5) whether other evidence specific to the defendant's case "demonstrates a complete breakdown in the sentencing process," *id.* But the key consideration is often "[w]hether the district court would simply reimpose the same sentence on remand, or whether instead the sentence would likely change to a significant degree if [the case] were returned to the district court for discretionary resentencing." *United States v. Lawrence*, 405 F.3d 888, 907 (10th Cir. 2005) (internal quotation marks omitted, brackets in original). *See also Lauder*, __ F.3d __, 2005 WL 1349974 at *13; *United States v. Magallanez*, 408 F.3d 672, 685-86 (10th Cir. 2005).

Mr. Waite contested the facts underlying the district court's drug-quantity findings and there is a substantial difference, at least 141 months, between the

sentence based on the district court's findings and one based on the quantity he stipulated to.  In addition, the sentencing court made general statements expressing discomfort with mandatory guidelines. Opening the sentencing hearing, the court said:

> I would remind counsel for both the United States and defense counsel that sentencing guidelines rules—Congress very clearly intends that judges follow them, and Congress has demonstrated little tolerance for deviation from them, even when perhaps a sound exercise of discretion would be appropriate.  But this is not the season where judges are going to be permitted to exercise a substantial degree of discretion in sentencing policy, and this Court has to live with that reality; but I would say respectfully to defense counsel and to the United States, "So will you."

R. Vol. II at 5-6.  The court later stated:

> I chafe at the requirements that I follow sentencing guidelines written by intelligent, well-intentioned people who are not here facing the parties who will be punished for their crimes.
> But that said, the law applies to me, it applies to the United States, and it applies to every defendant before me, and I will not engage in flights of fantasy or fiction, discounting this testimony, ignoring the other, in order to achieve a desired result.  Nothing breeds contempt in the public's notion of fairness and justice [more] than that kind of shenanigan.  I won't play.

R. Vol. III at 11-12.  But neither statement was a particular objection to application of the guidelines in Mr. Waite's case. *Cf. Lawrence*, 405 F.3d at 907-908 (the sentencing court noting but not endorsing the view that the guidelines are Draconian).  The only statement by the court specific to Mr. Waite was its

observation that "[t]he low end of the guidelines is harsh enough." R. Vol. III at 21.

In any event, the critical consideration in this case is the district court's confidence in its fact finding. "[T]he district court did not merely find the sentencing-enhancing facts by a preponderance of the evidence." *Magallanez*, 408 F.3d at 686. Rather, the court said that the drug quantity finding could be proved "beyond a shadow of a doubt," R. Vol. II at 6, and was likely "grotesquely understated." R. Vol. III at 14. We held in *Magallanez* that such expressions of confidence by the district court in its findings "strongly suggest[] that even with greater latitude, post-*Booker*, to take the weight of the evidence in support of sentencing enhancements into account, the court would reach the same conclusion regarding drug quantity." *Id.* Here, as in *Magallanez*, "[t]he court based its assessment of drug quantity on the evidence at trial, totaling up all drug quantities specifically linked by witnesses to [the defendant]." *Id.* Although in this case the testimony was given at the co-conspirator's trial, it was still trial testimony. The judge who sentenced Mr. Waite had presided over the other trial and thus had both personal knowledge of the testimony and the opportunity to judge its reliability.

Mr. Waite offers no unique facts or circumstances that would warrant a departure from the guidelines under the 18 U.S.C. § 3553(a) factors. His case is

indistinguishable from *Magallanez*. In both cases the district court found the drug quantity beyond a reasonable doubt and sentenced at the bottom of the guidelines range. And in both cases "there is nothing to suggest that the court was inclined to go lower." *Magallanez*, 408 F.3d at 686.

## II.  Other Issues

Mr. Waite's original issues on appeal were the closely related claims that (1) the district court clearly erred in its drug quantity calculation because it based the calculation on the uncorroborated testimony of a co-conspirator, and (2) his Sixth Amendment confrontation right was violated because he could not cross examine Mr. Dax. Having disposed of the *Booker* issue, we consider only whether these issues have merit with respect to a nonmandatory-guidelines sentence. They do not. We have consistently held that the sentencing judge may rely on hearsay declarations by persons not subject to cross-examination by the defendant. *See Dazey*, 403 F.3d at 1177 n.7 (noting that sentencing courts may consider hearsay); *United States v. Shewmaker*, 936 F.2d 1124, 1129 (10th Cir. 1991) (sentencing court may rely on hearsay provided it has "some minimal indicium of reliability beyond mere allegation"); *United States v. Hershberger*, 962 F.2d 1548, 1554 (10th Cir. 1992) ("[C]onstitutional provisions regarding the Confrontation Clause are not required to be applied during sentencing proceedings.").

The sentence is AFFIRMED.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge