FILED
United States Court of Appeals
Tenth Circuit

**May 18, 2010**

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

STEVEN JAMES WAITE,

Defendant-Appellant.

No. 10-8012

(D.C. Nos. 2:06-CV-00278-WFD and
2:01-CR-00099-WFD-3)
(D. Wyo.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **BRISCOE,** Chief Judge, **TACHA,** and **O'BRIEN**, Circuit Judges.

---

Steven James Waite, a federal prisoner appearing *pro se*, seeks a certificate of

appealability ("COA") to enable him to appeal the district court's denial of his 28 U.S.C.

§ 2255 motion to vacate, set aside, or correct sentence. The district court granted Waite's

motion to proceed *in forma pauperis*. For the following reasons, we DENY Waite's

request for a COA and DISMISS this matter.

**I**

On September 16, 2002, the United States filed an eleven-count superseding

indictment which charged Waite, Jason Encinias and Xavier Arriola-Perez with, *inter*

---

[*] This order is not binding precedent, except under the doctrines of law of the case,
res judicata, and collateral estoppel.

*alia*, conspiring with each other, and with other individuals, to possess methamphetamine with intent to distribute. Subsequently, the government moved to sever Waite's trial from that of Encinias and Arriola-Perez. At a hearing on the government's motion, the following exchange occurred:

> **The District Court:** The motion relates that there are 11 counts charged in the indictment and [Waite] is only charged in Count One which involves the conspiracy; that his role in the conspiracy is minor when compared to that of the co-conspirators who are co-defendants in this proceeding; and that his continued participation in this trial would unduly prejudice his right to obtain a fair trial as there would be a great risk that his conduct would be wrapped up in the . . . allegedly broader conduct of the other co-defendants.

> \* \* \* \*

> In particular, [] Waite is concerned about alleged evidence, including a badly beaten individual that dies of his injuries, autopsy photos, pictures of individuals stuffed into a 55-gallon drum and other kinds of evidence.

> Did I represent the position of the United States accurately with regard to this motion[?]

> **The Government:** You did, Your Honor.

ROA, Vol. 1 at 20-21.

Ultimately, the district court granted the government's motion. Encinias and Arriola-Perez were tried and were found guilty of various drug and firearms related offenses charged in the superseding indictment. See United States v. Encinias, 123 F. App'x 924 (10th Cir. 2005); United States v. Arriola-Perez, 137 F. App'x 119 (10th Cir. 2005). Waite, meanwhile, agreed to plead guilty to two counts of distributing methamphetamine as alleged in a second superseding indictment.

2

Pursuant to Waite's plea agreement, the government stipulated that no more than "5 kilograms of methamphetamine should be attributed to [Waite's] distribution for sentencing purposes." See United States v. Waite, 139 F. App'x 119, 120 (10th Cir. 2005) (quoting the plea agreement). Despite the government's stipulation, the presentence report ("PSR") prepared by the probation office concluded that 9.072 kilograms (20 pounds) of methamphetamine were attributable to Waite. The PSR's conclusion was based upon the investigation of Drug Enforcement Administration Agent Steve Woodson whose conclusion was, in turn, based upon the statements of Joseph Dax, who at the trial of Encinias and Arriola-Perez (hereinafter "Encinias/Arriola-Perez trial") testified that he and Waite jointly obtained methamphetamine from Arriola-Perez which they later distributed.

Prior to sentencing, the government filed written objections to the PSR, stating, in relevant part, as follows:

> The United States notes that the ascribing of the full 20 pounds of methamphetamine distributed by both Dax and Waite to [Waite] is not an unreasonable assignment of relevant conduct given the applicability of U.S.S.G. Section 1B1.3(a)(1)(B). Also, the plea agreement in this case left the determination of the Base Offense Level and other sentencing factors to the discretion of the trial court. (See, Plea Agreement, unnumbered paragraph 3, page 2.)[.] Nevertheless, in the plea agreement, the United States stipulated that it could only prove the amount directly distributed by the defendant was just under 5 kilograms of methamphetamine, and it abides by that stipulation.

ROA, Vol.1 at 53-54 (emphasis in original).

At Waite's sentencing, the district court explained that "the fact that the government may have stipulated as to relevant conduct does not in any way prohibit this

3

Court from exercising its responsibility in determining what the relevant conduct is."

Waite, 139 F. App'x at 120 (quoting sentencing transcript). The district court then called

Agent Woodson who, over the objection of Waite's counsel, testified that 9.072

kilograms of methamphetamine was attributable to Waite. Finding Woodson's testimony

to be credible,[1] the district court concluded that Waite's United States Sentencing

Guidelines ("U.S.S.G.") base-offense level was 36, which, in turn, led to a total offense

level of 33 after a 3-level reduction for acceptance of responsibility was applied. When

coupled with his criminal history category of III, Waite's offense level of 33 led to an

advisory Guidelines range for imprisonment of 168 to 210 months. The district court

sentenced Waite to 168 months.

After this court rejected Waite's claims on direct appeal, see id. at 119-23, and the

Supreme Court denied certiorari, see Waite v. United States, 546 U.S. 1054 (2005), Waite

filed a timely § 2255 motion in the district court on November 24, 2006, alleging nine

propositions of error. In claims one, four, five, six, seven, and nine, Waite alleged that he

---

[1] More specifically, the district court stated as follows:

> The testimony of [Agent Woodson] in this proceeding corroborates what I already knew from the record in the previous trial. Mr. Dax and Mr. Waite were jointly fronted methamphetamine by Arriola-Perez. The evidence is uncontroverted on that point. Twenty pounds of methamphetamine, as both parties know, is probably a grotesquely understated amount, but it's the only legitimate amount that I can attach any significance to for purposes of this sentencing.

Waite, 139 F. App'x at 120-21(quoting sentencing transcript) (brackets in original, emphasis omitted).

4

was denied his Sixth Amendment right to effective assistance of counsel as recognized and defined in Strickland v. Washington, 466 U.S. 668 (1984). In claims two and three, Waite contended that his constitutional right to due process was violated by prosecutorial misconduct. And finally, in claim eight, Waite argued that his constitutional rights were violated at sentencing because the sentencing court treated the Guidelines as mandatory, rather than discretionary. On December 31, 2009, the district court issued an order in which it rejected each of Waite's arguments and denied his § 2255 motion. Waite now seeks to appeal the district court's denial of the second and third claims raised in his § 2255 motion.

## II

A COA is a jurisdictional prerequisite to an appeal from the denial of a § 2255 motion. See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make such a substantial showing, an applicant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted).

In the second and third claims raised in his § 2255 motion, Waite argued that his due process rights were violated by prosecutorial misconduct. More specifically, Waite alleged that the government knowingly presented Dax's perjured testimony at the

5

Encinias/Arriola-Perez trial and that the government breached the plea agreement it had reached with Waite by reneging on promises which related to federal charges pending against Waite's wife and by failing to adequately object to the PSR and to Woodson's testimony at sentencing.

In addressing these claims, the district court initially noted that "because [] Waite did not raise [them] on direct appeal, ordinarily a procedural bar would [preclude them from being raised in the habeas corpus context]." ROA, Vol. 1 at 159. The district found, however, that by alleging the ineffective assistance of his appellate counsel, Waite had potentially demonstrated sufficient cause and prejudice to overcome this procedural bar. See United States v. Mora, 293 F.3d 1213, 1216 (10th Cir. 2002) ("When a defendant fails to raise a claim on direct appeal, he is barred from pursuing that claim in a later § 2255 proceeding, absent a showing of cause and actual prejudice, or a fundamental miscarriage of justice."). The district court then proceeded to address Waite's claims, implicitly concluding that he was not prejudiced by his failure to raise either claim on direct appeal because (1) "at [the] sentencing hearing, defense counsel raised the issue of the inconsistencies in Dax's testimony . . . . [but] the evidence against [] Waite outweighed the discrepancies," see ROA, Vol. 1 at 160-61, and (2) there is no evidence that the government actually breached the plea agreement.

After a careful review of the record, we conclude that reasonable jurists would not debate the district court's conclusions and thus, we decline Waite's request for a COA on these claims. In so holding, we are mindful that with respect to Waite's breach of plea

6

agreement argument, United States v. Boatner, 966 F.2d 1575, 1576-80 (11th Cir. 1992), presents a seemingly factually similar case. There, the Eleventh Circuit held that the government breached its plea agreement promise to stipulate to a certain drug quantity when, at sentencing, "it attempted to bolster the presentence investigation report" by "declaring to the court that its later investigations had revealed that the amount of [contraband] involved was actually [greater than what was stipulated to.]" Id. at 1579. This declaration corroborated the testimony of the probation officer who, when called to testify by the court, attributed the greater amount of contraband to the defendant based upon his interviews with law enforcement officials. See id. at 1577-79.

In the instant case, however, the prosecutor did nothing to "bolster" the PSR or Woodson's testimony at sentencing. Indeed, rather than "support[] the information contained in the presentence report," see id. at 1579, the government offered no opinion as to the efficacy of Woodson's conclusion other than its pre-sentencing acknowledgment that attributing 9.072 kilograms to Waite was "not unreasonable." Boatner is, therefore, readily distinguishable. See United States v. Stringfellow, 1996 WL 315750 at *5 (10th Cir. June 5, 1996) (unpublished) ("[T]he government's actions in Boatner are distinguishable from the circumstances of this case. Here, the government did not attempt to introduce belatedly discovered information about the defendant. This is not a case where the government discovered facts indicating its prosecutorial discretion was not properly exercised and attempted to recover by reneging on its promise."). No jurist of reason would debate the district court's determination that Waite was not prejudiced by

7

his failure to raise a breach of plea argument on direct appeal.

## III

We DENY Waite's request for a COA and DISMISS this matter.

Entered for the Court


Mary Beck Briscoe
Chief Judge